## Commonwealth v. Rumford (No. 2)

*Donald B. Smith*, for Commonwealth.
*John P. Fullam*, for defendant.

BIESTER, J., January 2, 1951.—This matter comes before us for disposition after trial without a jury, the testimony having been presented to the court on September 13, 1950.

The action was instituted by Donald B. Smith, Esq., for the Commonwealth of Pennsylvania for past maintenance of one Albert B. Rumford, an inmate of the Norristown State Hospital, and there confined since November 2, 1914.

An amended complaint avers, inter alia, that defendant and Albert B. Rumford were married on August 15, 1903, which marriage was subsequently dissolved by a decree in divorce on December 16, 1946; that Albert B. Rumford was committed to the Norristown

State Hospital on November 2, 1914, and there confined continuously until December 16, 1946; that the cost of caring for and supporting Albert B. Rumford in the hospital from November 2, 1914, to January 31, 1945, was $6,485.85; that defendant is financially able to make payment of the sum demanded, or at least a portion thereof, and was financially able to do so on and prior to December 16, 1946, the date of the divorce.

Defendant filed her answer to the amended complaint denying her financial ability, both at the time the suit was instituted and also as of any time prior to December 16, 1946.

The action is instituted by virtue of the provisions of the Act of June 1, 1915, P. L. 661, as amended, 71 PS §1783, which provides, inter alia, as follows:

"The husband, wife, father, mother, child, or children of any person who is an inmate of any asylum, hospital, home, or other institution, maintained in whole or in part by the Commonwealth of Pennsylvania, and who is legally able so to do, shall be liable to pay for the maintenance of any such person, . . ."

From the pleadings and testimony we make the following

### Findings of Fact

1. Donald B. Smith, Esq., was properly qualified and authorized as a representative of the Department of Justice of the Commonwealth of Pennsylvania to institute the action against defendant.

2. Defendant is a resident of Croydon, Bucks County, Pa.

3. Defendant was the wife of Albert B. Rumford, the parties having been married on August 15, 1903, the marriage, however, having been dissolved by a decree in divorce granted by the Court of Common Pleas of Bucks County on December 16, 1946.

4. Albert B. Rumford was committed to the Norristown State Hospital on November 2, 1914, and has been continuously there confined until at least September 13, 1950.

5. The cost of caring for and supporting Albert B. Rumford at the Norristown State Hospital from November 2, 1914, until January 31, 1945, was $6,485.85

6. Approximately one year prior to the admission of Albert B. Rumford to the Norristown State Hospital he had deserted defendant, leaving her entirely without funds.

7. Four children were born as a result of this marriage, three of whom are now living.

8. Of these children Marjorie was "placed for adoption" by defendant, and adopted when five years of age.

9. Another child, Kenneth, was "placed in a poorhouse," and sometime later in the "Lutheran Home."

10. Defendant worked at "Grundy's Mill" from about 1914 for several years, earning between $5.95 a week to $7.50 a week.

11. During World War I defendant operated a boarding house, one of her boarders having been Harry Vandergrift.

12. The cost of procuring defendant's divorce in 1946 was borne by her son, Kenneth Rumford.

13. On June 30, 1939, Anna C. Rumford, a daughter of defendant and then a single woman, purchased lots 41, 42, 43, and 44 of section J on plan of lots of Croydon Park (hereafter referred to as the Sycamore Avenue property) from Marguerite Tryon, single woman, the consideration having been $250, and the deed having been recorded at Doylestown in Deed Book 680, page 216, etc.

14. The funds for the purchase of the lots were borrowed by the daughter, Anna C. Rumford.

15. A house was built on these lots, Anna C. Rumford, the defendant's daughter, and Harry Vandergrift providing most of the money for the materials used in the building of the house, defendant being without "an earthly penny."

16. Defendant first lived in the cellar, which was the first part of the house finished.

17. Harry Vandergrift died February 12, 1944.

18. Defendant was the beneficiary of a $2,000 life insurance policy issued on the life of Harry Vandergrift.

19. Of this sum of $2,000 defendant paid $750 to her daughter in repayment of money advanced by the daughter and the daughter's husband.

20. The balance of the insurance money was used by defendant for living purposes and finishing the building of the house.

21. Anna C. Rumford, the daughter, in 1940, married one, Wallace N. Conklin, who died about 1947 in Pittsburgh, Pa., where he and his wife had lived from the time of their marriage.

22. On October 15, 1946, Anna C. Rumford Conklin and Wallace N. Conklin, her husband, conveyed the Sycamore Avenue property to defendant, the deed having been recorded at Doylestown in Deed Book 816, page 366, on April 1, 1947.

23. After the death of Wallace N. Conklin in 1947, defendant's widowed daughter returned to the home of defendant and now lives with her.

24. In 1947 defendant sold and conveyed the Sycamore Avenue property with the building thereon erected, the consideration therefor having been $6,900, and there having been no liens or encumbrances against the property at that time.

25. In 1947 defendant bought lots situate at 704 First Avenue, Croydon, Bucks County, from Mar-

guerite E. Tryon, the purchase price having been $1,000.

26. A house was built on the premises at 704 First Avenue, Croydon, at a cost of approximately $9,000, including a contractor's charge of $1,700.

27. When defendant moved into the premises on First Avenue, Croydon, a Mr. John Loeffler, whom she had known for a great many years, became a boarder in the home.

28. John Loeffler contributed funds to defendant to be used in connection with the building of a dwelling on First Avenue, Croydon, and holds a judgment note in the amount of $4,215, which is said to be his contribution toward the cost of building a home.

29. Defendant is sixty-five years of age; is not employed; has no money in bank, and is supported by contributions from her children and from John Loeffler.

30. The premises situate on First Avenue, Croydon, have a present market value of between $9,500 and $9,800.

## Discussion

The factual situation appearing from the testimony produced at the hearing is to the effect that defendant was deserted by her husband and left in impecunious circumstances. Within a short time after the separation Albert B. Rumford was admitted to the Norristown State Hospital. So difficult was defendant's problem that she was compelled by stress of financial circumstances to place one of her children for adoption and another in an institution. For several years she earned very meager wages. Eventually she decided to give up her emplyoment and take in boarders. Her daughter, Anna C. Rumford, purchased several lots in Croydon, Bucks County, at a price of $250, which money she borrowed and repaid at the rate of $15 each month. The modest dwelling built upon these lots was begun on contributions advanced by her daughter and

completed with the assistance of one of her boarders, Harry Vandergrift, who died in 1944, leaving a life insurance policy in the sum of $2,000 of which defendant was the beneficiary. Of this sum defendant paid her daughter $750 in repayment of money advanced by the daughter and her husband, the balance of the fund having been used by defendant for day-to-day expenses and also in the completion of the house.

In 1946 the daughter and her husband conveyed the house and lots to defendant. In 1947 defendant sold and conveyed the premises for a consideration of $6,900 and immediately purchased other lots in Croydon, Bucks County, for the sum of $1,000. Having no income of her own, the balance of the purchase price was used by defendant for her own maintenance in part and in part for the erection of a dwelling house upon these lots. In connection with the erection of this new home one John Loeffler contributed approximately $4,215 and now holds a judgment note against defendant for this amount. This property situate on First Avenue, Croydon, has a market value of between $9,500 and $9,800. Defendant has no other asset but this real estate and no income whatsoever, she being maintained and supported through contributions from her children and John Loeffler.

As we have heretofore decided in an opinion filed as a result of preliminary objections to the original complaint (See Commonwealth v. Rumford, 71 D. & C. 359) it is incumbent upon the Commonwealth, in order for it to recover in cases of this kind, that it establish that defendant was financially able to contribute toward the maintenance of Albert B. Rumford prior to the procuring of the divorce, which was obtained on December 16, 1946. The Commonwealth is also required to establish defendant's ability to contribute at the time of the institution of the present suit.

As of the date of the divorce decree there is no evidence whatever that defendant was in a position to contribute toward the maintenance of her then husband. It is true that she was the beneficiary of a life insurance policy in the amount of $2,000, payable to her upon the death of Harry Vandergrift, who died February 12, 1944, but this fund was used in part to repay money borrowed from her daughter and son-in-law and partially for her own maintenance, although an undisclosed portion thereof was used for the completion of the Sycamore Avenue property. It is also true that the date of the deed conveying the Sycamore Avenue premises to defendant is October 15, 1946, but the record does not disclose whether the deed was delivered prior to the recording, which was April 1, 1947, and, therefore, after the date of the divorce.

If we were to permit the entry of the judgment in favor of the Commonwealth in the amount of its claim, or even for a portion thereof, the result would be that defendant might eventually become a public charge. John Loeffler holds a judgment note in the amount of $4,215, which would be an additional lien upon the real estate of defendant, and since Mrs. Rumford is dependent upon the contributions from others for her daily maintenance it is more than conceivable that she may in the future be required either to sell her real estate or encumber it in order to provide for her own maintenance.

We are in accord with the well written opinion of Judge Henninger in Commonwealth v. Groller, 41 D. & C. 366, to the effect that the possession of capital assets is not conclusive of a person's ability to pay and that there is no enforcible obligation unless the person sought to be charged is, in the discretion of the court, financially able to make such compensation without incurring undue personal privation.

We think that the Commonwealth has failed to meet its burden in that it has been unsuccessful in establishing the financial ability of defendant to make contribution toward the maintenance of her former husband in the Norristown State Hospital, either while their marriage was in effect or at the time suit was instituted.

Following are our

### Conclusions of Law

1. Defendant, Sadie Rumford, also known as Sadie Oberholtzer, if legally able to do so, is liable for the support of her former husband, Albert B. Rumford, in the Norristown State Hospital from the time of his admission to that institution until the date of the divorce of the parties on December 16, 1946.

2. The term "legally able so to do" as used in the act of assembly means financially able to do so without incurring undue personal privation.

3. Where the party sought to be charged has obtained a divorce from the inmate during his stay in the institution, the Commonwealth is required to establish the financial ability of defendant during the period of marriage and also at the time suit is instituted against defendant.

4. Defendant, Sadie Rumford, also known as Sadie Oberholtzer, was not financially able to contribute toward the support of her then husband, Albert B. Rumford, from November 2, 1914, to January 31, 1945, the period for which recovery is sought, or from November 2, 1914, until December 16, 1946, the date of the divorce between the parties.

5. Defendant, Sadie Rumford, also known as Sadie Oberholtzer, was not financially able to contribute toward the support of her former husband, Albert B. Rumford, as of April 12, 1950, when suit was instituted or as of the present time.

6. Unless exceptions are filed hereto within 30 days after service of the following order on counsel for the Commonwealth of Pennsylvania, judgment will be entered in favor of defendant, Sadie Rumford, also known as Sadie Oberholtzer.

### Order

Now, January 2, 1951, the foregoing decision is ordered filed and the Prothonotary of Bucks County is directed to serve notice of its filing upon counsel for both parties and if no exceptions are filed thereto within 30 days of this notice, judgment shall be entered in favor of defendant, Sadie Rumford, also known as Sadie Oberholtzer.